# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00534-COA

**JOHN BATTLE, JR. A/K/A JOHN BATTLE**  **APPELLANT**
**A/K/A JOHN WESTLEY BATTLE, JR.**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/2016 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/17/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.

### WILSON, J., FOR THE COURT:

¶1. John Battle was convicted of deliberate design murder and sentenced to life imprisonment following a jury trial in the Coahoma County Circuit Court. On appeal, Battle argues that there is insufficient evidence to support the conviction, that the jury's verdict is against the overwhelming weight of the evidence, and that his trial counsel provided ineffective assistance. We find no error and affirm Battle's conviction and sentence. We decline to address his ineffective assistance claim because the record is not sufficient to address the claim on direct appeal.

### FACTS AND PROCEDURAL HISTORY

¶2.     Around 9 p.m. on March 27, 2012, Patrick Williams and his girlfriend, Tanedra Christian, were sitting on the porch of Christian's home in Jonestown in Coahoma County. A white car, later identified as belonging to Clyde Chatman Jr., drove past Christian's house, turned around, and drove by again. Chatman had bought Christian gifts in the past, and she knew that he was interested in her romantically. Christian testified that Williams watched the car drive by, stood up, and walked toward the street. Williams then said, "[T]hey won't stop playing with me." After the car passed by, Williams left Christian's porch and began walking toward his home nearby. As Christian started to walk back inside her home, she heard gunshots. She ran inside and told her sister to go look for Williams. Christian did not see who fired the shots and had not seen anyone nearby except for the white car.

¶3.     Byron and Toshemah Cosby own a nearby gas station. They heard the gunshots, but they did not go outside immediately because customers were waiting on them. When they went outside a few minutes later, they found Williams lying on the ground. Toshemah testified that Williams called to her for help and said that "those motherfuckers from Friars Point" had shot him. Williams had been shot three times in the back. He died at the scene a few minutes later.

¶4.     Deputy Myette Dawson of the Coahoma County Sheriff's Department testified that within about an hour he had received tips identifying Chatman, Battle, and Reginald Cox as potential suspects.[1] All three were brought in for questioning, and Dawson obtained gunshot

---

[1] Battle, Chatman, and Cox were indicted together. The circuit court subsequently granted motions to sever filed by both Battle and Cox. Chatman was tried separately and convicted of deliberate design murder, and this Court affirmed his conviction on appeal. *See Chatman v. State*, No. 2016-KA-01285-COA (Miss. Ct. App. April 17, 2018) (modified

residue samples from each man.

¶5.     Chief Deputy Fernando Bee testified that prior to Williams's murder, he saw Chatman driving his white Crown Victoria in Jonestown. Bee initially testified that he thought he saw Chatman around 6 p.m., but he later acknowledged that he was uncertain of the time and that it could have been later. Bee could see two more people inside Chatman's car, but he could not identify them. Bee knew that Chatman was from Friars Point, and he wondered what he was doing driving around Jonestown. Later that evening, Bee heard gunshots, and someone flagged him down near the gas station where Williams had been shot. Williams had lost consciousness by the time Bee arrived.

¶6.     After Battle was arrested, he asked to speak to Bee. Bee testified that he gave Battle a *Miranda* warning, and Battle then gave a voluntary statement. According to Bee, Battle admitted that he was in a car in Jonestown with Chatman and Cox on the night that Williams was killed. Battle claimed that Williams reached inside their car and hit Chatman. Battle then "heard a gunshot," and Williams ran away. Battle admitted that he then "reached out of the car and . . . took a couple of shots at Williams" as Williams fled. Battle stated that he, Chatman, and Cox then drove back to Friars Point, and he tossed the gun into a field along the way. Deputies were unable to locate the gun. Bee testified that two or three tractors were in the process of disking the field that Battle had described to him.

¶7.     Bee's testimony was the only evidence of Battle's confession. Bee testified that he

_____

opinion on motion for rehearing). To the extent that the State's theory in this case differed from its theory of the case in *Chatman*, our law "allows the State to argue alternate theories of the case when prosecuting separate individuals." *Carr v. State*, 655 So. 2d 824, 835 (Miss. 1995).

recorded the confession, and he gave the audiotape to the deputy in charge of the case file. However, the State was unable to find the tape later, and Bee did not know what happened to it. Battle never provided a written statement.

¶8.    Shannon Roy testified for the State as an expert on latent prints. She testified that a print lifted from the front passenger quarter panel of Chatman's car matched Battle's left palm print. She acknowledged that she could not say when the print was made. She also acknowledged that there were sixteen unidentified prints in and on the car.

¶9.    Samuel Suggs, a forensic trace evidence specialist with the Mississippi Forensics Laboratory, testified as an expert about the results of tests of gunshot residue kits collected during the investigation.[2] A sample collected from Battle's right palm revealed a particle with an elemental composition of barium and antimony that was "indicative of" gunshot residue. Suggs testified that the sample was only "indicative of" gunshot residue—and not a "positive" test result—because the third element of gunshot residue, lead, was not present in the sample. Suggs also acknowledged that it is possible for a sample to test positive for, or indicative of, gunshot residue because the person recently handled fireworks or brake

---

[2] Much of Suggs's testimony is missing from the trial transcript because, for reasons that are not clear, the court reporter failed to transcribe or record a significant part of Suggs's testimony. The State described the missing portion of Suggs's testimony in a statement of the evidence filed pursuant to Mississippi Rule of Appellate Procedure 10(c). Battle's retained appellate counsel did not object or otherwise respond to the State's Rule 10 statement. The Rule 10 statement's description of the testimony concerning tests of samples obtained from Battle's hands is also consistent with statements made by Battle's trial counsel during her closing argument. In addition, part of the transcript of the State's opening statement is gibberish. The State also raised this issue with the court reporter, but apparently she was unable to correct it. In any event, the State's opening statement is not material to any issues raised on appeal.

pads. Suggs testified that the other three samples obtained from Battle—from his left palm, the back of his left hand, and the back of his right hand—all tested negative for gunshot residue. Suggs testified that washing one's hands and various other activities can remove gunshot residue particles. In this case, gunshot residue kits were obtained from Battle about two hours after the shooting.

¶10. Suggs also testified that four samples obtained from Chatman's car—from the rear driver's side window, behind the driver's seat headrest, the front interior passenger door, and the rear driver's side interior door—all tested positive for gunshot residue. Two samples obtained from Chatman were indicative of gunshot residue, and two were negative. Three samples obtained from Cox were indicative of gunshot residue, and the other sample was negative.

¶11. Battle did not testify, but he called nine friends and family members as witnesses. Several friends testified that they were with Battle or saw him in Friars Point on March 27, 2012; however, their testimony was not entirely consistent, and none of them testified that they saw Battle after 7:30 or 8 p.m. that evening. Battle's mother testified that he was at her house beginning at around 8 p.m. and never left until the police came to her house to arrest him later that night. Battle's sister testified that Battle answered the phone when she called her mother's house around 9:20 p.m. Battle's half-brother testified that he saw Battle at their mother's house from around 8:15 to 8:45 p.m. Battle's half-brother then left the house briefly, but he testified that Battle was still at their mother's house when he returned around 9:30 p.m. Deputy Bee testified in rebuttal that he had lived in Friars Point for most of his

5

life; that he had known Battle's mother, sister, and half-brother for many years; and that none of them had ever contacted him to offer an alibi for Battle.

¶12. The jury found Battle guilty of deliberate design murder, and the circuit court sentenced him to life imprisonment. Battle filed a motion for judgment notwithstanding the verdict or a new trial, which the circuit court denied, and a notice of appeal.[3]

## ANALYSIS

### I. Weight and Sufficiency of the Evidence

¶13. When we address a challenge to the sufficiency of the evidence, the question is not whether *this Court* "believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *abrogated on other grounds by Little v. State*, 233 So. 3d 288 (Miss. 2017).

¶14. When we review the denial of a motion for a new trial based on the weight of the evidence, we similarly consider "the evidence in the light most favorable to the verdict," and we will not reverse unless the "verdict . . . is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little*, 233 So. 3d at 292 (¶21). "We do not make independent resolutions of conflicting evidence. Nor

[3] The State correctly argues that Battle's appeal was untimely because the order denying his post-trial motion was entered on March 2, 2016, so his notice of appeal should have been filed no later than Friday, April 1, 2016. *See* M.R.A.P. 4(e). Battle's notice of appeal, which his retained appellate counsel sent to the circuit clerk via regular mail, was not filed until Monday, April 4, 2016. Rather than penalize Battle for his attorney's poor choice of filing methods, we suspend the rules and allow the appeal. *See* M.R.A.P. 2(c).

do we reweigh the evidence or make witness-credibility determinations." *Id.* at (¶20) (citation omitted). "Instead, 'when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony.'" *Id.* at (¶20) (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). We review the trial judge's decision to deny a motion for a new trial for abuse of discretion. *Id.* at (¶21).

¶15.    Battle argues that Deputy Bee's testimony that Battle confessed to shooting Williams is not credible because the State failed to produce a recording of the confession and because Battle never gave a written statement. Battle also argues that his family's testimony that he was at home at the time of the shooting is more credible than Deputy Bee's testimony that he confessed to the shooting. Based on these assertions, Battle argues that he is entitled to a judgment of acquittal or at least a new trial. We disagree.

¶16.    The evidence in this case is sufficient to support the conviction because Deputy Bee's testimony that Battle confessed, together with the physical evidence, was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. In addition, the evidence in this case was clearly conflicting, so the jury must "be the sole judge of the credibility of the witnesses and the weight and worth of their testimony." *Id.* at (¶20). "[W]e do not resolve conflicts between evidence." *Id.* at 289 (¶1). "Additionally, it is well-established that a person may be found guilty based on nothing more than the uncorroborated testimony of a single witness." *Graves v. State*, 216 So. 3d 1152, 1161 (¶21) (Miss. 2016). Here, Deputy Bee's testimony that Battle confessed supports the verdict, and his testimony was not inherently "implausible or so substantially impeached as to be

7

unworthy of belief." *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000). The jury could have concluded that Battle's friends and relatives, who never contacted law enforcement about Battle's alleged alibi, were not credible.[4] Therefore, we cannot say that the trial judge abused his discretion by denying Battle's motion for a new trial.

## II. Ineffective Assistance of Counsel

¶17.    Battle also claims he did not receive effective assistance of counsel at trial. Battle alleges that he was arrested and interrogated without probable cause, but his trial attorney failed to file a motion to suppress his confession or other evidence. We decline to address this claim on direct appeal, as there is nothing in the record to support it.

¶18.    To prove that his trial counsel was ineffective, Battle "must show *both* (1) 'that counsel's performance was deficient'—i.e., 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment'—*and* (2) that he was prejudiced as a result—i.e., 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Wilson v. State*, 198 So. 3d 408, 414 (¶22) (Miss. Ct. App. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶19.    Ordinarily, claims of ineffective assistance of counsel should be raised in a motion for

---

[4] *See Stevenson v. State*, 738 So. 2d 1248, 1252 (¶19) (Miss. Ct. App. 1999) (refusing "to disturb the verdict of [the] jury," as the jury was entitled to find "the State's witnesses more credible than [the defendant] and his three witnesses who, on the face of it, were subject to claims of bias by virtue of their family and emotional ties to the defendant"); *see also Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995) ("family members can be easily impeached for bias").

post-conviction relief, not on direct appeal. *Pinter v. State*, 221 So. 3d 378, 386 (¶17) (Miss. Ct. App. 2017). As this Court has summarized,

> It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal because there is usually insufficient evidence within the record to evaluate the claim. Because an appellate court is limited to the trial record on direct appeal, issues of ineffective assistance of counsel are more appropriate in a motion for post-conviction relief. We may address such claims on direct appeal only if the issues are based on facts fully apparent from the record. If the record is not sufficient to address the claims on direct appeal, the Court should dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief.

*Johnson v. State*, 191 So. 3d 732, 735-36 (¶13) (Miss. Ct. App. 2015), *cert. denied*, 202 So. 3d 209 (Miss. 2016), *cert. denied*, 137 S. Ct. 670 (2017) (citations, quotation marks, and alterations omitted).

¶20. Consistent with this Court's usual practice, we decline to address Battle's ineffective assistance claim on direct appeal. The record reveals little of the circumstances of Battle's arrest. Deputy Dawson and Deputy Bee testified that unspecified tips led them to identify Chatman, Battle, and Cox as suspects. Chatman turned himself in voluntarily, and Bee's testimony suggests that Chatman then implicated Battle and Cox. As noted above, Bee testified that Battle gave a voluntary statement after receiving a *Miranda* warning. That is all that the present record reveals. Battle's trial counsel may have foregone a motion to suppress because probable cause for the arrest was evident. In any event, the record is insufficient for us to determine why trial counsel did not file a motion to suppress or whether there would have been a legal or factual basis for such a motion. We therefore dismiss this claim without prejudice. Battle may raise the issue in a motion for post-conviction relief,

9

provided he first obtains permission from the Mississippi Supreme Court. *See Pinter*, 221 So. 3d at 386 (¶19) & n.2; Miss. Code Ann. § 99-39-7 (Rev. 2015).

## CONCLUSION

¶21. The State presented sufficient evidence to convict Battle of deliberate design murder, and the jury's verdict is not contrary to the overwhelming weight of the evidence. We decline to address Battle's claim of ineffective assistance because the present record is not sufficient to address the claim.

¶22. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**