# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00320-COA

**DONTA KIRBY A/K/A DONTA TERRELL KIRBY A/K/A DONTA T. KIRBY**　　　　　　　　**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2022 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/23/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1. Donta Kirby was indicted for the first-degree murder of Lorenzo Halthon and two counts of possession of a weapon by a felon. Kirby proceeded to trial and was found guilty on all charges. The Lowndes County Circuit Court sentenced Kirby as a habitual offender and imposed consecutive sentences of life in prison without eligibility for parole for first-degree murder and service of two ten-year terms for the counts of possession of a firearm by a felon. Kirby appeals, raising three claims of error: ineffective assistance of counsel, improper limitation on cross-examination, and insufficient evidence to support the verdict. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.      On July 2, 2020, the body of Lorenzo Halthon was found on the side of a road in Lowndes County. Officers collected five .380-caliber shell casings and a projectile from the crime scene. The medical examiner recovered two projectiles from Halthon's body. About a week after the murder, Trooper Wade Jones pulled Kirby over for traffic violations. The traffic stop resulted in Trooper Jones searching Kirby's vehicle. After weapons were found in the vehicle, Kirby ran from the scene but was ultimately located about twelve hours later. Among other weapons, Trooper Jones found a .380-caliber handgun in Kirby's vehicle. A ballistics expert from the crime lab examined the casings from the scene and projectiles from the victim's body and determined they were fired from the .380 firearm found in Kirby's vehicle. Kirby would later admit the gun "had a body on it." The victim's wife testified Kirby was the last known person to see Halton alive and he admitted to being with Halton the night he was killed. Surveillance video from a nearby business also showed a black truck similar to Kirby's driving toward and away from the murder scene near the time a neighbor heard gunshots. Further, Captain Bryan Turner searched Kirby's apartment with the consent of Kirby's wife. In a bedroom in the apartment, Captain Turner found "some dirty clothes belonging to Mr. Kirby, some dirty clothes belonging to Mrs. Kirby, men's underwear and socks and things of that nature." While searching a dresser in the bedroom, Captain Turner found a Crown Royal bag that held a .38-caliber firearm and prescriptions and documents

2

bearing Kirby's name.[1]

¶3.    Based on this evidence, a Lowndes County grand jury indicted Kirby for first-degree murder of Halthon, possession of a .380 handgun by a felon, and possession of a .38-caliber firearm by a felon. Upon the State's request, the trial court amended the indictment to include a habitual-offender designation under Mississippi Code Annotated section 99-19-81 (Rev. 2020). At trial, defense counsel pursued the theory that Kirby only fled the scene because of the multiple other weapons found in the rear of his vehicle and not due to the murder weapon later discovered in a separate part of the vehicle behind the front glove box.  Further, defense counsel argued that Kirby only received the murder weapon after the killing had been completed by someone else.  At the completion of trial, the jury found Kirby guilty of all three counts charged in the indictment.

## DISCUSSION

¶4.    Kirby raises three issues on appeal: ineffective assistance of counsel, limited cross-examination, and sufficiency of the evidence. Finding no error, we affirm all three convictions and sentences.

### I.    Ineffective-Assistance of Counsel

¶5.    Kirby's first issue is an ineffective-assistance-of-counsel claim. "Judicial scrutiny of counsel's performance must be highly deferential." *Moffett v. State*, 354 So. 3d 929, 936

---

[1] To clarify, the .380 firearm found in Kirby's vehicle is distinct from the .38-caliber firearm found in the apartment.

3

(¶14) (Miss. Ct. App. 2022). In general, "claims of ineffective assistance of counsel should be raised in a motion for post-conviction relief, not on direct appeal." *Blocton v. State*, 340 So. 3d 384, 393 (¶35) (Miss. Ct. App. 2022) (quoting *Battle v. State*, 269 So. 3d 325, 330 (¶19) (Miss. Ct. App. 2018)). A claim of ineffective assistance of counsel is not addressed on direct appeal unless

> (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.

*Hinton v. State*, 311 So. 3d 1213, 1215 (¶9) (Miss. Ct. App. 2020). Expanding on this rule, our courts have also stated that appellate courts "may address such 'claims on direct appeal when the record affirmatively shows that the claims are without merit.'" *Murray v. State*, 345 So. 3d 610, 621 (¶26) (Miss. Ct. App. 2022). But this Court may only consider "an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record." *Dartez v. State*, 177 So. 3d 420, 423 (¶18) (Miss. 2015).[2]

¶6.     Kirby stipulates that the record is adequate for this Court to rule on his ineffective-assistance claim. While not explicitly stipulating that the record is adequate, the focus of the State's argument on appeal is that Kirby's claims are without merit and do not meet the criteria to show ineffective assistance by Kirby's counsel. Because we find the record is

---

[2] *See Blocton*, 340 So. 3d at 393 (¶35). When the record lacks sufficient information, "the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction relief (PCR)." *Dartez*, 177 So. 3d at 423 (¶18).

sufficient pertaining to the alleged hearsay testimony and the evidence of other bad acts (possession of other guns), we address Kirby's ineffective-assistance claim.

¶7.    Kirby argues that he received ineffective assistance of counsel because his trial counsel failed to make certain objections during trial. Specifically, he alleges that his counsel (1) failed to object to hearsay testimony and (2) failed to object to evidence of other crimes or bad acts.

¶8.    "A strong but rebuttable presumption exists that counsel's performance was effective." *Moffett*, 354 So. 3d at 936 (¶14). "[T]o prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial." *Morrow v. State*, 275 So. 3d 77, 83 (¶24) (Miss. 2019) (quoting *Holly v. State*, 716 So. 2d 979, 989 (¶37) (Miss. 1998)) (applying the two-pronged test for ineffective-assistance-of-counsel claims announced in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)). "Whether counsel's efforts were both deficient and prejudicial is examined based on the totality of the circumstances." *Reed v. State*, 204 So. 3d 785, 790 (¶17) (Miss. Ct. App. 2016). The burden of proving both prongs for ineffective assistance is on the defendant, and "[i]f either prong is not met, the claim fails." *Murray*, 345 So. 3d at 621 (¶28) (quoting *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006)).

¶9.    "Decisions that fall within the realm of trial strategy do not amount to ineffective assistance of counsel." *Ford v. State*, 230 So. 3d 316, 320 (¶9) (Miss. Ct. App. 2017). For

5

"matters of trial strategy, this Court generally defers to the judgment of counsel." *Braggs v. State*, 121 So. 3d 269, 275 (¶20) (Miss. Ct. App. 2013) (quoting *Houston v. State*, 887 So. 2d 808, 815 (¶34) (Miss. Ct. App. 2004)). Trial counsel's decision not to object is "presumed strategic unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Greenleaf v. State*, 267 So. 3d 749, 752 (¶11) (Miss. 2019) (quoting *Rogers v. State*, 85 So. 3d 293, 297 (¶16) (Miss. 2012)).

### A. Hearsay Testimony

¶10. First, Kirby claims his counsel was deficient for failing to object to hearsay testimony from Trooper Jones. Kirby alleges that Jones's testimony recounting another officer's brief statement before the traffic stop about Kirby running drugs, guns, and money between Mississippi and Arkansas was hearsay. He argues that his trial counsel should have objected to this irrelevant hearsay testimony and that the failure to take action to exclude this information resulted in an unfair trial.

¶11. "The failure of counsel to make certain objections may fall within the ambit of trial strategy, and therefore may not give rise to a claim for ineffective assistance of counsel." *Morrow*, 275 So. 3d at 84 (¶25) (quoting *Conners v. State*, 92 So. 3d 676, 686 (¶25) (Miss. 2012)). "There is a presumption that decisions made by defense counsel are strategic, and this Court will not second-guess counsel's decisions." *Moffett*, 354 So. 3d at 937 (¶15) (internal quotation marks omitted) (quoting *Shinn v. State*, 174 So. 3d 961, 966 (¶12) (Miss. Ct. App. 2015)). To overcome this presumption, Kirby must show that his counsel's decision not to

object was ill-chosen and caused obvious unfairness across the entire trial. The decision of trial counsel to not raise an objection to this testimony by Trooper Jones is a decision that falls within the ambit of trial strategy. It was a reasonable strategy not to object to the statement about trafficking because it could help dilute the powerful evidence that Kirby was caught with the murder weapon by demonstrating the possibility he obtained it from someone else. Defense counsel did not deny that the murder weapon was found in Kirby's vehicle. Instead, his trial counsel strategically challenged whether Kirby was the person responsible for using the gun to murder Halthon and argued that Kirby had not received possession of the gun until after the murder had been committed.

¶12.    In addition, we are mindful that "[a]n out-of-court statement is hearsay only if it is offered 'to prove the truth of the matter asserted.'" *O'Quinn v. State*, 349 So. 3d 1226, 1231 (¶17) (Miss. Ct. App. 2022) (quoting MRE 801(c)). A witness's "[s]tatements do not constitute hearsay when admitted to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *Carruthers v. State*, 348 So. 3d 1042, 1049-50 (¶16) (Miss. Ct. App. 2022) (quoting *Eubanks v. State*, 291 So. 3d 309, 322-23 (¶51) (Miss. 2020)). As an illustration, in *Carruthers*, "Carruthers allege[d] that [Officer] Johnson was allowed to give hearsay testimony about [a third-party's] tip that he had traded stolen property to Carruthers." *Id*. This Court determined that this testimony was not hearsay because "[Officer] Johnson's testimony regarding [the third-party's] tip was not offered for the truth of the matter asserted but rather to explain why and how the police obtained a search

warrant for Carruthers's home." *Id.*

¶13. Trooper Jones's testimony about the information he received from Captain Turner was not offered in this case to prove that Kirby was transporting drugs, money, and guns between Mississippi and Arkansas. Instead, Trooper Jones's testimony explained the sequence of events that led to the initial search of Kirby's truck and the discovery of the murder weapon.[3]

¶14. Because the testimony at issue in this case simply gave information about Trooper Jones's course of investigation, "the challenged statements could have been admitted on the ground that they were offered for a non-hearsay purpose." *O'Quinn*, 349 So. 3d at 1231 (¶17). Thus, any hearsay objection to Jones's testimony regarding Captain Turner's statements could have been reasonably expected to be overruled and counsel's non-objection cannot be characterized as ineffective assistance. "[T]rial counsel '[is] not constitutionally ineffective for failing to object to' certain evidence" where, "based on the applicable law,

---

[3] While we recognize the following case is not yet binding caselaw, *Gilbert v. State*, No. 2021-KA-01265-COA, 2023 WL 5541302 (Miss. Ct. App. Aug. 29, 2023), *mot. for reh'g filed* (Oct. 18, 2023), is factually similar to the instant case and offers a helpful comparison. In a trial for leaving the scene and aggravated DUI, an officer testified that "[h]e ran the tag number on the truck and found that it was registered to James Cory Gilbert and Autumn Gilbert. During the course of his inventory of the vehicle, he found a cell phone in the truck." *Id.* at *7 (¶25). The officer stated "[he] was then able to contact Autumn, who told him Gilbert had the truck. At that point, law enforcement began to search for Gilbert." *Id.* This Court found that the officer's "statement was not offered to prove that Gilbert was driving the truck at the time of the accident," but "[i]nstead, it was offered to show the information upon which law enforcement acted, i.e., why they began to search for Gilbert." *Id.* We further held that the "[officer's] testimony was an explanation of the course of his investigation" and did not constitute hearsay. *Id.* Therefore, "Gilbert [had] not shown that his trial counsel's performance in this instance was deficient or that his trial counsel's failure to object in this instance deprived him of a fair trial." *Id.*

trial counsel 'could have reasonably expected any objection to be futile[.]'" *Carruthers*, 348 So. 3d at 1050 (¶19) (quoting *Edwards v. State*, 615 So. 2d 590, 597 (Miss. 1993)). A "failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Id*. at 1049 (¶15).

### B. Evidence of Other Crimes or Bad Acts (Possession of Additional Long Guns)

¶15. Second, Kirby claims his trial counsel was deficient for failing to object to evidence of other long guns found in Kirby's truck demonstrating other crimes or bad acts (presented in the form of testimony and photographs). Kirby alleges that the evidence pertaining to the long guns was not connected to any charge in his indictment and was not necessary for the jury to decide whether he was guilty of Halthon's murder. He further claims that there is no strategy for his defense that could justify allowing the jury to receive the evidence of the other guns.

¶16. Again, we are reminded that "counsel's choice of whether [to] . . . make certain objections falls within the ambit of trial strategy[.]" *Greenleaf*, 267 So. 3d at 752 (¶11) (quoting *Givens v. State*, 967 So. 2d 1, 6 (¶15) (Miss. 2007)). Trial counsel's non-objection to the evidence of the four other guns found in Kirby's truck falls within the realm of trial strategy. Thus, his counsel's decision to withhold an objection generally would not amount to ineffective assistance.

¶17. We note that "there is 'no constitutional rule that counsel must make . . . every possible objection.'" *Carruthers*, 348 So. 3d at 1052 (¶27) (quoting *Charles v. Thaler*, 629

F.3d 494, 502 (5th Cir. 2011)). Rather, our appellate courts "presume that decisions not to object to testimony [and evidence] were strategic if they fairly can be characterized as such." *Murray*, 345 So. 3d at 623 (¶35) (quoting *Shinn*, 174 So. 3d at 967 (¶15)).

¶18.    The evidence of a "cache of long guns" that Kirby is referring to here was first introduced during Trooper Jones's testimony. Trooper Jones testified that in the course of his investigation during the traffic stop, he found four long guns in the back seat of Kirby's truck.[4] Based on the transcripts from trial, it is clear that during cross-examination and closing argument, defense counsel attempted to use the evidence of the four long guns to Kirby's advantage to counter the fact that he ran from the scene of the traffic stop. He did not object to the evidence that Kirby was found in possession of these weapons (or the testimony about Kirby running guns) because this evidence provided the jury with an alternate explanation for why Kirby fled from the scene as it was after the long guns were found and before the murder weapon was located behind the glove box. Therefore, Kirby failed to show that his trial counsel's performance was deficient or deprived him of a fair trial.

## II.    Limitation of Cross-Examination

¶19.    Kirby's next issue is a claim that his right to cross-examine one of the State's rebuttal

---

[4] "[W]here another crime or act is 'so interrelated to the charged crime as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences,' proof of the other crime or act is admissible." *Clanton v. State*, 365 So. 3d 203, 214 (¶38) (Miss. 2023) (quoting *Ballenger v. State*, 667 So. 2d 1242, 1256-57 (Miss. 1995)). Moreover, "[w]here substantially necessary to present to the jury 'the complete story of the crime' evidence or testimony may be given even though it may reveal or suggest other crimes." *Id.* (quoting *Ballenger*, 667 So. 2d at 1257).

witnesses, Titus Little, was improperly limited. "Limitations on cross-examination are reviewed for abuse of discretion." *Anthony v. State*, 108 So. 3d 394, 397 (¶5) (Miss. 2013) (quoting *Jefferson v. State*, 818 So. 2d 1099, 1109 (¶24) (Miss. 2002)).

¶20.    Kirby alleges that he was not allowed to question Little regarding a previous charge that was "no billed" by a grand jury in 2009. In addition, even though the jury heard evidence that Little was on probation, Kirby argues that he was not allowed to further inquire into the information he had that Little was not reporting for probation as required. Kirby claims he wanted to question Little regarding any bias Little had or motivation to "please the State" that might influence his testimony. But because the trial court did not allow this line of questioning, he insists that his constitutional right to confrontation and his right to present a defense were both violated.

¶21.    Kirby contends that the trial court's exclusion is analogous to the holding in *Ambrose v. State*, 254 So. 3d 77, 104 (¶67) (Miss. 2018), where our supreme court ruled that "under the heightened scrutiny standard of review" afforded in a death-penalty case, the trial court erred by excluding evidence of a prosecution witness's alleged criminal past. Even though the supreme court ultimately found the exclusion to be harmless error in *Ambrose*, Kirby asks this Court to find that the inability to fully cross-examine Little denied him the right to a fair trial and to reverse and remand for a new trial. However, for the reasons outlined below, Kirby's case is distinguishable from the holdings in *Ambrose*.

¶22.    In that case, it is noteworthy that Ambrose was charged with capital murder and,

11

unlike Kirby, was facing the death penalty, which as mentioned rightfully lends itself to heightened scrutiny on appellate review. At trial, Ambrose wanted to cross-examine a witness, Lee, about "Lee's criminal past." *Id*. at 99 (¶45). He sought to introduce evidence that Lee was currently on probation for a non-adjudicated burglary and had been arrested for an unrelated armed robbery charge on the day he was interviewed about the Ambrose murder. *Id*. at 99 (¶43). The armed robbery charge against Lee was presented to a grand jury that returned a finding of "no true bill" and chose not to indict him. This occurred before the murder trial against Ambrose. *Id*. at 99-100 (¶47). Ambrose desired to use this evidence on cross-examination to show that Lee was potentially biased in testifying for the State at the time of trial. *Id*. at 99 (¶44). After a hearing, the trial court determined that the testimony Ambrose sought to elicit was inadmissible evidence of criminal conduct and was not relevant. *Id*. at 100 (¶47).

¶23.    Ambrose appealed, contending "that the trial court erred by excluding testimony that Lee faced unresolved criminal charges, over which the prosecutor retained the power to exercise favorable or unfavorable discretion." *Id*. at 100 (¶49). According to Ambrose, the error in excluding this evidence "clearly was prejudicial because Lee's testimony was key to implicating Ambrose . . . as the lead participant . . . in [the victim's] fatal brain injuries." *Id*. Conversely, the State argued that the trial court correctly excluded the evidence of Lee's non-adjudicated burglary charge and his armed robbery arrest "because both charges against him had been resolved prior to Ambrose's trial; therefore, nothing existed for the State to

leverage against Lee to make him a biased witness in favor of the State." *Id*. at 102 (¶59).

¶24. In finding the exclusion of the evidence to be error, the supreme court emphasized the fact that Lee was a principal witness in the State's case against Ambrose and an eyewitness to the events leading to the victim's death. "[O]ne accused of a crime has the right to broad and extensive cross-examination of the witnesses against him, and especially is this so with respect to the principal prosecution witness." *Id*. at 101-02 (¶56) (quoting *Suan v. State*, 511 So. 2d 144, 148 (Miss. 1987)). The court "emphasized that a material witness's favored treatment from law enforcement authorities when the witness is subject to prosecution is probative of the witness's interest or bias and may be developed through cross examination." *Id*. at 101 (¶55). Ultimately, the supreme court affirmed Ambrose's conviction for capital murder. However, the court found the limitation to be error, though harmless, determining that "[a]lthough Lee's testimony was not necessary to find[] Ambrose guilty of capital murder beyond a reasonable doubt, . . . [b]y limiting Ambrose's cross examination of Lee, the trial court denied Ambrose the opportunity to fully challenge Lee's credibility." *Id*. at 104 (¶67).

¶25. The case before us is distinguishable from *Ambrose* for three reasons. First, unlike the witness in *Ambrose*, Little was not called by the State in its case-in-chief as an eyewitness to the crime or as a prosecution witness for the purpose of offering any evidence pertaining to Halthon's murder or any information against Kirby. In contrast, the supreme court described the witness in *Ambrose* as a "principal witness in the sense that he was an

13

eyewitness to nearly the entire sequence of events leading to [the victim's] death." *Ambrose*, 254 So. 3d at 104 (¶66). Here, Little was called as a witness only for the State's rebuttal and took the stand merely to clear his own name and refute Kirby's accusations against him. Simply stated, Little did not have anything to gain by testifying in the State's rebuttal.

¶26.    Second, the criminal history that Kirby sought to introduce and use against Little on cross-examination was a charge from 2009, which was over a decade old at the time of trial. Similar to *Ambrose*, the 2009 charge against Little was previously presented to a grand jury that chose to return a no-true bill. However, the witness in *Ambrose* was arrested for the later no-billed armed robbery on the *same day* he was interviewed about the murder with which Ambrose was charged. Here, Little's arrest and presentation to a grand jury both occurred twelve years before his testimony in Kirby's trial. The significant passage of time makes this unproven conduct too remote to credibly argue that it somehow motivated Little to testify because his "neck was on the line if he did not testify in a manner pleasing to the [State]." *Ambrose*, 254 So. 3d at 104 (¶66) (quoting *Suan*, 511 So. 2d at 148).

¶27.    Further, to allege that the State could re-present a case that was no-billed twelve years earlier—based solely on Little's failure to testify favorably in an unrelated case and without gaining new evidence that the original crime was committed by Little—is dubious and ignores other statutory and legal jurisprudence. In addition to speedy trial considerations, our laws recognize that while the prosecuting attorney gives the grand jury advice on matters of law, it is the grand jury's solemn duty, as an "independent body," to be "the sole judge[] of

14

the facts[,] and the prosecuting attorney may not influence [the grand jury] as to whether an indictment will be approved." MRCrP Appendix A (Sample Charge to the Grand Jury). "[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *Entergy Miss. Inc. v. State*, 132 So. 3d 568, 572 (¶10) (Miss. 2014). "[O]nly a grand jury can advise a defendant of what he is to be charged with." *State v. Berryhill*, 703 So. 2d 250, 257 (¶30) (Miss. 1997) (emphasis added). "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Id*. (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960)). "The grand jury, a cornerstone of criminal jurisprudence, must remain free from suspicion and distrust and must always rest on a plane so high that no criticism can attach to it." *Mosley v. State*, 396 So. 2d 1015, 1019 (Miss. 1981). To assume a twelve-year-old charge would be resurrected after a finding of a no true bill, based on unrelated testimony over a decade later, runs afoul of these long-held principles.

¶28. Finally, it is important to note that Kirby's counsel did in fact question Little in front of the jury about whether Little was on probation for a felony conviction. This factor is distinguishable from *Ambrose*, where the trial court completely excluded questioning regarding the witness's probationary status. In addition, it is relevant to note that Kirby did not pursue this line of questioning further during the proffer outside the jury's presence. Notably, Kirby's counsel did not ask Little questions about Little's belief or perception as

15

to whether the State could extend favorable treatment or leniency to him for the 2009 no-true-billed charge or for his probation, in return for testifying at Kirby's murder trial. The extent of Kirby's alleged desire to introduce evidence of Little's "bias" includes only one question: "And at some point that – as we sit here today, that case has not gone forward, correct?" Little responded, "Yes," and Kirby did not ask any further questions on the subject.

¶29.    In the more recent case of *Pettus v. State*, 295 So. 3d 993, 1000 (¶28) (Miss. Ct. App. 2020), this Court discussed *Ambrose* when it affirmed the trial court's limitation of the defendant's attempt to cross-examine a state witness regarding a pending unrelated burglary charge against the witness.  In that case, Pettus and Adams were both indicted for burglary. *Id*. at 999 (¶23). Adams pled guilty to the lesser-included offense of grand larceny and agreed to testify against Pettus. *Id*. After he pled guilty to the grand larceny charge, but before he took the witness stand in Pettus's trial, Adams was indicted on a separate, unrelated burglary charge. *Id*. Pettus sought to introduce evidence of Adams's pending criminal charge on cross-examination, but the trial court sustained the State's objection. *Id*.

¶30.    "Pettus maintain[ed] that because he has a constitutional right to both fully cross-examine his accusers and assert his theory of defense, he was entitled to an opportunity to question Adams regarding Adams's subsequent arrests[.]" *Id*. at 1004 (¶42). Although Pettus did not seek admission of the evidence under Mississippi Rule of Evidence 616, this Court referenced *Ambrose* in its decision and "recognized that questioning a witness for the prosecution about separate, unrelated pending criminal charges 'has been allowed for

16

purposes of showing motivation to testify.'" *Id*. at 1002 (¶34) (quoting *Ambrose*, 254 So. 3d at 103 (¶63)). However, although "Mississippi Rule of Evidence 616 allows evidence of bias for the purpose of attacking the credibility of a witness" as noted in *Ambrose*, 254 So. 3d at 101 (¶53), "the admissibility of evidence is limited by Rule 403," which contains a balancing test for excluding relevant evidence. *Pettus*, 295 So. 3d at 1001-02 (¶¶30, 35). This Court stated, "[W]hile a criminal defendant is entitled to present his defense to the finder of fact, . . . the defendant's right to present his defense is limited by considerations of relevance and prejudice." *Id*. at 1005 (¶47) (quoting *Hughey v. State*, 729 So. 2d 828, 831 (¶¶10-11) (Miss. Ct. App. 1998)). This Court did not find any reversible error by the trial court in limiting Pettus's cross-examination of Adams regarding his criminal history. *Id*. at 1005-06 (¶49).

¶31.   To be clear, "[t]he Confrontation Clause confers a right to confront 'those who "bear testimony"' against the defendant." *Willis v. State*, 352 So. 3d 602, 612 (¶26) (Miss. 2022) (quoting *Conners*, 92 So. 3d at 683 (¶16)). However, "a defendant's right to cross-examination is not unlimited, and the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Williams v. State*, 281 So. 3d 263, 268 (¶14) (Miss. Ct. App. 2019) (quoting *Harris v. State*, 242 So. 3d 181, 185 (¶10)

17

(Miss. Ct. App. 2017)).[5] Therefore, based on the record before us, the trial court did not abuse its discretion by limiting the cross-examination of Little and excluding additional evidence of alleged acts or conduct for which he had not been convicted.

### III.    Sufficiency of the Evidence

¶32.    Lastly, Kirby claims that the evidence was insufficient to support his conviction of felon in possession of a weapon with regard to the gun found at the apartment. He argues that there was no proof offered that Kirby had knowledge of and dominion or control over the .38-caliber handgun found in a liquor bag in a drawer in his house.

¶33.    "Sufficiency-of-the-evidence claims are reviewed de novo." *Moffett*, 354 So. 3d at 929 (¶43) (quoting *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018)). "When reviewing a challenge to the sufficiency of the evidence, 'the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (internal quotation marks omitted) (quoting *Haynes v. State*, 934 So. 2d 983, 988 (¶15) (Miss. 2006)). "The evidence is viewed in the light most favorable to the State, and the State is given all favorable inferences that can be reasonably drawn from the evidence presented at trial." *Id*. We "will reverse and render only when the facts point so

---

[5]    *See also Craft v. State*, 656 So. 2d 1156, 1162 (Miss. 1995) ("[A] defendant is entitled to 'fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony.' . . . The defendants would have this Court believe that Myers allows any questions regardless of any evidentiary barriers that also may be applicable. This argument is without merit." (quoting *Myers v. State*, 296 So. 2d 695, 700 (Miss. 1974))).

overwhelmingly in favor of the defendant that reasonable jurors could not have found, beyond a reasonable doubt, the defendant was guilty." *Id*. (quoting *Jones v. State*, 991 So. 2d 629, 634 (¶11) (Miss. Ct. App. 2008)).

¶34. Here, the firearm in question was found in the apartment where Kirby lived. The bedroom where the firearm was found also contained Kirby's "dirty clothes" and his personal work documents. More specifically, the firearm was found in a Crown Royal bag that also contained prescriptions and work documents bearing Kirby's name. We find that the State presented sufficient evidence for which a reasonable juror could infer that Kirby constructively possessed the .38-caliber firearm found in a drawer in his apartment.

## CONCLUSION

¶35. Finding that Kirby's trial counsel did not render ineffective assistance, Kirby's cross-examination of the State's rebuttal witness was properly limited, and sufficient evidence was presented for Kirby's convictions, we affirm Kirby's convictions and sentences on all three counts.

¶36. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**