LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Justin Barron was convicted of murder by a jury in the Copiah County Circuit Court. Barron was sentenced to serve life in the custody of the Mississippi Department of Corrections. Barron filed post-trial motions, which the trial court denied. Barron now appeals, arguing the trial court erred by: (1) denying his motion for directed verdict; (2) denying his peremptory instruction; (8) admitting hearsay testimony from several witnesses, including rebuttal witnesses; (4) excluding testimony about the victim’s history of domestic violence; (5) overruling his objection to the State’s jury instruction S-5; (6) overruling his objection to certain statements made by the State; and (7) failing to grant his motion for a judgment notwithstanding the verdict (JNOV).
FACTS
¶2. On June 25, 2010, Barron and his mother, Joann Miller (Joann), were at their home in Copiah County, Mississippi. Joann shared the home with her husband, Matthew Miller (Matthew); their son, Matthew Jr.; and Barron, Joann’s eighteen-year-old son from a prior marriage. Their home at the time was a one-room shop, which had been divided by furniture into sleeping and living quarters. Joann testified that she arrived at the home around 5:45 p.m. to find Barron weed-eating the yard, Matthew standing near his truck, and her youngest son playing with a friend. Joann testified Matthew left to run an errand. Matthew returned later and, according to Joann, seemed angry. Matthew entered the shop and began yelling at Joann. Joann testified Matthew then began throwing objects at her, including a love seat, a shop-vac, and a toy box. Matthew left the shop to take their youngest son’s friend home.
¶ 3. Joann testified Matthew returned to the shop and shoved her onto the couch. Matthew then threw part of the shop-vac toward Barron, grabbed Barron, and pushed him against a cabinet. Joann asked Matthew to let Barron go. Matthew hit Joann on the side of the head and shoved her onto the couch again. Matthew began hitting Joann’s hands and feet. Joann testified that she was unable to defend herself. Joann then heard loud sounds, pushed herself out from under Matthew, and saw Barron holding a shotgun. Barron had shot Matthew twice in the back. Joann immediately dialed 911. The 911 call was received at 8:34 p.m. Joann then retrieved a rag to wipe Matthew’s brow.
¶ 4. Sarah Miller (Sarah), Matthew’s sister-in-law, heard about the shooting and called Joann. Sarah testified that Joann told her emergency personnel had not responded yet. Sarah also spoke with Barron and asked him if Matthew was still breathing. Barron was unsure and, at Sarah’s request, went over to Matthew to *535 check for a pulse. Barron responded, “I don’t think so.”
¶ 5. Sarah contacted Sharon Hughes (Sharon) and informed her that Matthew had been shot. Sharon and her husband, Barry Hughes (Barry), lived a few miles away from Joann and Matthew. Sharon and Barry arrived at the scene, finding Barron outside the shop talking on his cell phone. Sharon and Barry each testified they entered the shop and found Matthew’s body on the couch. Joann, Sharon, and Barry moved Matthew’s body onto the floor. Barry attempted to perform CPR. Matthew was wearing a tank top and underwear.
¶ 6. Sharon and Barry each testified that Joann told them Matthew did push her onto the couch, but she got up and was walking toward the front door when Barron shot Matthew. Sharon and Barry also testified Joann had said Barron did not need to shoot Matthew, and that Matthew was not threatening her life.
¶ 7. Dr. Amy Gruszecki, a forensic pathologist, conducted the autopsy on Matthew’s body. Dr. Gruszecki determined Matthew had suffered two gunshot wounds, one to the left-upper back and the other to the left-middle back. Wadding was found in both gunshot wounds, indicating the shots were fired close to Matthew’s body. Dr. Gruszecki also found that Matthew tested positive for alcohol, marijuana, methamphetamine, and an allergy medicine. Dr. Gruszecki opined that Matthew’s body lacked injuries to support Barron’s theory that Matthew exhibited the characteristics of “excited delirium” due to the combination of alcohol and methamphetamine in his system.
¶ 8. Scott Barnes, a deputy with the Copiah County Sheriffs Department, was one of the first emergency personnel to arrive at the scene. Deputy Barnes saw Barron sitting on the hood of a car outside the shop. Deputy Barnes entered the shop and observed Barry performing CPR on Matthew. Barry indicated Barron was responsible. After asking Joann, Sharon, and Barry to exit the shop, Deputy Barnes put Barron in a patrol car.
¶ 9. Jerry Spell, an investigator with the Copiah County Sheriffs Department, arrived at the scene at 9:01 p.m. Investigator Spell interviewed Barron early the next morning. Barron admitted to shooting Matthew but stated he did so because Matthew was on top of Joann. Investigator Spell told Barron that Joann had stated she was not there when Barron shot Matthew. Barron clarified his statement, saying that he heard Joann say “Get off me” but that he did not know where she was when he shot Matthew. Barron told Investigator Spell he could have handled the situation differently, but his first instinct was to get his shotgun.
¶ 10. Investigator Spell testified that Barron told him of another incident in which Matthew had pushed Joann. Barron said he took a gun, pointed it at Matthew, and told him if that happened again, it would not end well for Matthew. Barron told Investigator Spell that was the first time Matthew had assaulted Joann. After speaking with Joann the night of Matthew’s death, Investigator Spell said Joann complained of tenderness to the right side of her hairline, but no injury was visible. Investigator Spell also documented a bruise on the top of Joann’s right foot. Investigator Spell said both Barron and Joann stated they were not in any danger that night.
¶ 11. Dr. Scott Farr Smith, an emergency-room physician, examined Joann on June 28, 2010. Joann complained that her husband had hit her on the left side of her head, and she was experiencing numbness in her hands and lower arms. Dr. Smith *536 noted that there was no bruising to Joann’s head, but Joann did indicate tenderness behind her ear. A scan indicated no fracture or other damage to her head. Dr. Smith also observed a small abrasion on her big toe. An X-ray indicated no fracture to her foot.
¶ 12. Dr. Emily Ward, a forensic pathologist, reviewed Dr. Gruszecki’s autopsy report. Dr. Ward agreed that Matthew had two fatal gunshot wounds to his back. Dr. Ward thought Matthew exhibited the characteristics of “excited delirium” due to the combination of alcohol and methamphetamine in his system.
DISCUSSION
I. DIRECTED VERDICT
II. PEREMPTORY INSTRUCTION
III. JNOV
¶ 13. As several of Barron’s issues address the legal sufficiency of the evidence, we will address them together. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Regarding whether the evidence was legally sufficient to support the verdict, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed!.]’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. Id. The jury determines the credibility of witnesses and resolves conflicts in the evidence. Davis v. State, 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
¶ 14. Barron’s indictment stated he “did wilfully, unlawfully, feloniously, [and with] malice aforethought and without authority of law, kill and murder ... Matthew Miller ... in violation of Section 97-3-19.... ” The jury was further instructed on deliberate-design murder. Mississippi Code Annotated section 97-3-19(1)(a) (Rev.2006) defines deliberate-design murder as “[t]he killing of a human being without the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being.” The State must prove beyond a reasonable doubt: “(1) the defendant killed the victim; (2) without the authority of law; and (3) with deliberate design to effect his death.” Brown v. State, 965 So.2d 1023, 1030 (¶ 27) (Miss.2007).
¶ 15. Barron contends the evidence proves at most that he was guilty of manslaughter because his actions show no premeditation or malice. The jury was given a manslaughter instruction that tracked Mississippi Code Annotated section 97-3-35 (Rev.2006). Section 97-3-35 states that manslaughter is “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense .... ” Heat of passion has been defined as:
[A] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
*537 Givens v. State, 967 So.2d 1, 11 (¶ 33) (Miss.2007) (quoting Mullins v. State, 493 So.2d 971, 974 (Miss.1986)).
¶ 16. From the evidence presented, we find there was sufficient evidence for the jury to find Barron guilty of murder. Although Barron did not testify on his own behalf, his state of mind could be reasonably inferred from his actions and statements to the police. Investigator Spell testified to the following: Barron did not know if Joann was on the couch when he shot Matthew; Barron admitted to him that neither he nor Joann was in danger that night; Barron admitted he could have handled the situation differently; and Barron previously threatened Matthew with a gun after Matthew pushed Joann. There was also testimony from Sharon and Barry that Joann told them she was walking toward the door when Barron shot Matthew. Joann also told the Hugheses that Barron did not need to shoot Matthew because Matthew was not threatening her life. Furthermore, “[deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.” Brown, 965 So.2d at 1030 (¶ 28).
¶ 17. “[I]n order for a crime to be reduced from murder to manslaughter, circumstances must exist that would rouse a normal mind ‘to the extent that the reason is overthrown and that passion usurps the mind destroying judgment.’ ” Johnson v. State, 52 So.3d 384, 394 (¶ 29) (Miss.Ct.App.2009) (quoting Graham v. State, 582 So.2d 1014, 1018 (Miss.1991)). There was no evidence or testimony presented showing that Barron was acting in the heat of passion when he killed Matthew. Even Joann’s testimony concerning that night does not support Barron’s contention that he was acting in the heat of passion.
¶ 18. The jury was instructed on deliberate-design murder, manslaughter, and justifiable homicide but found the evidence supported a murder conviction. The jury clearly weighed any conflicts in the evidence in the State’s favor. The jury found that Barron did not act in the heat of passion or in self-defense, but deliberately shot Matthew twice in the back at close range. We find the evidence was sufficient to support the guilty verdict.
¶ 19. Barron also contends he should have been convicted of manslaughter under an “imperfect-self-defense” theory. As the State correctly points out, Barron did not raise this defense in the trial court. Barron’s defense was ordinary self-defense, not imperfect self-defense. All testimony, the jury instructions, and the opening and closing statements are void of any mention of imperfect self-defense. Additionally, Barron did not include imperfect self-defense in his motion for a new trial. “[Questions will not be decided upon appeal which were not presented to the trial court ... [giving] that court ... an opportunity to rule on them.” Fleming v. State, 604 So.2d 280, 293 (Miss.1992) (quoting Colburn v. State, 431 So.2d 1111, 1113-14 (Miss.1983)). Accordingly, this issue is procedurally barred from our consideration.
IV. HEARSAY
¶ 20. In his next issue on appeal, Barron contends certain statements made by Barry, Sharon, Sarah, Deputy Barnes, and Inspector Spell were hearsay and should have been excluded.
¶ 21. Sharon and Barry Hughes both testified as to what happened when they arrived at the scene and their subsequent conversations with Joann. Barron objected, and the trial court overruled the objection based upon the excited-utterance and present-sense-impression exceptions to the hearsay rule. Mississippi Rule of Evi *538 dence 803(1) states that a present-sense impression is “[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.” Mississippi Rule of Evidence 803(2) states that an excited utterance is “[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.” The record suggests that Joann was still under the excitement of the event at the time the statements were made to the Hugheses. The statements occurred approximately ten to twenty minutes after the shooting, and Sharon stated Joann seemed to be in shock and was visibly “shaken up.”
¶22. One of Barron’s concerns with Sharon’s and Barry’s testimony is the fact Joann’s statements to them were in response to the Hugheses asking her what had happened. However, “[t]he mere fact that the statement ... was in response to an inquiry ... does not necessarily take [it] outside the realm of admissible excited utterances.” Barnett v. State, 757 So.2d 323, 330 (¶ 18) (Miss.Ct.App.2000) (citing Sanders v. State, 586 So.2d 792, 795 (Miss.1991)). In fact, the Mississippi Supreme Court has held that “[w]here the excited utterance is prompted by a simple question, even from an officer, such as ‘What happened?’ or ‘What’s wrong?’ ” it may still fall under the exception. Carter v. State, 722 So.2d 1258, 1261 (¶ 10) (Miss.1998) (citations omitted).
¶ 23. The trial court found these statements by Joann to the Hugheses fell under both Rule 803(1) and Rule 803(2). We review a trial court’s ruling on the admissibility of evidence under our familiar abuse-of-discretion standard of review. Sanders v. State, 77 So.3d 497, 500 (¶ 9) (Miss.Ct.App.2011). We cannot find the trial court abused its discretion in admitting Joann’s statements to the Hugheses under the excited-utterance exception.
¶ 24. During the State’s rebuttal, Sarah testified that she spoke with Joann the day after Matthew’s murder. Joann told Sarah that she was walking toward the door when Barron shot Matthew. Joann also told Sarah that Barron did not have to shoot Matthew. Barron objected to these statements. The trial court overruled his objection, finding the statements were admissible as prior inconsistent statements under Mississippi Rule of Evidence 801(d)(1)(A). Rule 801(d)(1)(A) states that a statement is not considered hearsay if “[t]he declarant testifies ... and is subject to cross-examination concerning the statement, and the statement is ... inconsistent with the de-clarant’s testimony, and was given under oath.... ” However, Sarah’s testimony does not involve prior statements given under oath. Rather, Sarah’s testimony concerning Joann’s statements was merely impeachment testimony. Mississippi Rule of Evidence 607 states that “[t]he credibility of a witness may be attacked by any party....” Impeachment testimony must be “relevant to the issue at hand.” Johnson v. State, 655 So.2d 37, 41 (Miss.1995). We find this testimony relevant and admissible. It is customary for this Court to affirm a trial court’s decision if the correct result was reached for the wrong reason. Towner v. State, 837 So.2d 221, 225 (¶ 9) (Miss.Ct.App.2003).
¶ 25. Deputy Barnes testified when he arrived at the scene, “Barry came to [him] and said that the young gentleman sitting on the hood of the truck [ (indicating Barron) ] was responsible for the incident.” Barron objected to this statement, and the trial court overruled his objection. Barron contends the statement is hearsay, as it was used to prove that he *539 shot Matthew. However, there was never any doubt that Barron shot Matthew. The jury had previously heard that Barron shot Matthew. Any error committed by the trial court in allowing the officer to testify in this regard is harmless. See Lancaster v. State, 200 So. 721, 722 (Miss.1941) (Errors are harmless if “the same result would have been reached if they had not existed.”).
¶ 26. In regard to Investigator Spell’s testimony, Barron contends the trial court erred in allowing hearsay statements over his objection. However, the only objection Barron made to Investigator Spell’s testimony was to a leading question. Failure to object waives any error. Rubenstein v. State, 941 So.2d 735, 751 (¶ 27) (Miss.2006).
V. REBUTTAL TESTIMONY
¶ 27. In his next issue on appeal, Barron contends rebuttal testimony by Barry, Sharon, Sarah, and Investigator Spell was hearsay and should have been excluded. Barry, Sharon, Sarah, and Investigator Spell were called in to impeach Joann’s testimony in Barron’s defense. Joann had testified that she feared for her life during Matthew’s attack, and that Matthew was holding her down on the couch.
¶ 28. Since Barron made no contemporaneous hearsay objections in regard to Barry’s testimony or Investigator Spell’s testimony (and we discussed Sarah’s rebuttal testimony in the previous issue), we confine our review to testimony from Sharon.
¶ 29. Sharon spoke with Joann around 2:00 a.m. the day after Matthew’s death. Joann told Sharon that she was walking toward the door when Barron shot Matthew. Barron objected to Sharon’s testimony. The trial court overruled the objection, finding the statements to be admissible as prior inconsistent statements. Since we found similar testimony by Sarah to be admissible under Rule 801(d)(1)(A), we cannot find the trial court abused its discretion in admitting Sharon’s testimony.
¶ 30. Barron also argues the trial court should have granted a limiting instruction stating that this testimony should have been considered for impeachment purposes and not as substantive evidence. Barron failed to request a limiting instruction and argues the trial court should have granted one sua sponte. However, the trial court was not required to give a limiting instruction sua sponte; rather, the burden was on Barron to request the instruction. See Brown v. State, 890 So.2d 901, 913 (¶¶ 36-37) (Miss.2004); Franklin v. State, 72 So.3d 1129, 1140 (¶ 49) (Miss.Ct.App.2011). This issue is without merit.
VI. CHARACTER EVIDENCE
¶ 31. In his next issue on appeal, Barron contends the trial court erred in refusing to allow him to introduce evidence concerning prior instances of domestic violence committed by Matthew. During cross-examination of Brooklyn Miller, Matthew’s daughter, Barron asked her to recall an incident involving Matthew. The State objected. Barron was trying to show that Matthew had a history of abuse against Joann. This incident supposedly occurred at least ten years prior to trial, and Barron was unaware of it. The trial court sustained the objection. By not allowing him to present this evidence, Barron contends his defense was prejudiced.
¶ 32. However, we need not reach the issue of whether the trial court erred because Barron failed to properly preserve this issue for appeal. “Generally, when a party seeks to offer evidence which in turn is excluded by the trial court, before we will consider the matter on appeal *540 the party must have somehow placed in the record the nature and substance of the proffered evidence for our consideration.” Granger v. State, 853 So.2d 830, 833 (¶ 9) (Miss.Ct.App.2003) (quoting Harris v. Buxton T.V., Inc., 460 So.2d 828, 833 (Miss.1984)). “When testimony is excluded at trial, a record must be made of the proffered testimony in order to preserve the point for appeal.” Id. (citing Thompson v. State, 602 So.2d 1185, 1188 (Miss.1992)). Barron did not proffer the content of the excluded testimony at trial. Therefore, this assignment of error is without merit.
¶ 33. We note the jury was able to hear testimony that Matthew had pushed Joann at some point prior to the events leading up to his death.
¶ 34. The dissent misinterprets our findings regarding Brooklyn’s testimony. We do not reach the issue of whether the trial court was in error; rather, as previously stated, Barron failed to preserve this issue for appeal. Barron failed to proffer the testimony that he claims would have supported his theory of defense. Case law is clear that it was Barron’s duty to make a proffer of the excluded testimony in order to preserve the point for appeal. Id. We have no idea if Matthew abused Joann, or someone else entirely, approximately ten years prior to his death or if Brooklyn was aware of any such abuse. Many of Barron’s assertions regarding Matthew’s alleged abuse of Joann are vague insinuations. It is not our job to assume facts not in the record.
¶ 35. The dissent further contends the trial court’s limitation of Barron’s cross-examination of Brooklyn violated his right of confrontation. Our law allows “wide-open cross-examination so long as the matter probed is relevant.” Johnston v. State, 618 So.2d 90, 93 (Miss.1993). “Limitations placed on cross-examination are reviewed for abuse of discretion.” Jefferson v. State, 818 So.2d 1099, 1109 (¶ 24) (Miss.2002) (citations omitted). The trial court in this instance found this testimony was not relevant since it occurred at least ten years prior to Matthew’s death. Although Barron did not raise this specific issue on appeal, we do not find an abuse of discretion in the trial court’s ruling.
VII. JURY INSTRUCTION
¶ 36. Barron contends the trial court erred in overruling his objection to the State’s jury instruction S-5. Instruction S-5 provided:
The Court instructs the [j]ury that the chief distinction between murder and manslaughter is the presence of deliberation and malice in murder and [their] absence in manslaughter. Under the law of the State of Mississippi[,] every killing of a human being without authority of law is either murder or manslaughter; murder when done with malice aforethought and a deliberate design to effect the death of the person killed, and manslaughter when done in the heat of passion without malice and without premeditation.
Barron argues the language concerning deliberate design and malice aforethought is covered in the other jury instructions. Barron objected on the ground that he did not think there was such a thing as a “chief distinction” between murder and manslaughter. Since the first sentence of the instruction is a correct statement of law, we find no error by the trial court in overruling Barron’s objection. See Goldsby v. State, 226 Miss. 1, 15-16, 78 So.2d 762, 767 (1955); Johnson, 52 So.3d at 391 (¶ 17).
¶ 37. Barron further argues instruction S-5 does not address justifiable *541 homicide, self-defense, or defense of another. However, Barron did not object to instruction S-5 on those grounds. As previously stated, Barron objected on the ground that he did not think there was such a thing as “a chief distinction” between murder and manslaughter. “An objection must be made with specificity, and failure to articulate the grounds for objection constitutes .a waiver of the alleged error.” Ross v. State, 954 So.2d 968, 987 (¶ 27) (Miss.2007). This issue is without merit.
VIII. OBJECTIONABLE STATEMENTS
¶ 38. In his final issue on appeal, Barron contends the guilty verdict was based upon innuendo and conjecture. Barron refers specifically to the .State’s cross-examination of Richard Stevens, the 911 director who received Joann’s call at 8:34 p.m. that night. Stevens played the recording of the 911 call placed by Joann. During the cross-examination of Stevens, the State asked him whether Joann ever said she was assaulted by Matthew or was injured in any way. Stevens answered in the negative to these questions. Barron objected on the ground that the recording spoke for itself.
¶ 39. Barron is correct that “[i]t is prejudicial error for questions on cross-examination to contain insinuations and intimations of conduct for which there is no basis in fact.” Mingo v. State, 944 So.2d 18, 31 (¶ 48) (Miss.2006) (citations omitted). However, in this instance the State was asking questions for legitimate reasons' — it was trying to prove its theory of the case, that Barron murdered Matthew and did not commit the killing in the heat of passion or in self-defense. This issue is without merit.
¶ 40. THE JUDGMENT OF THE CO-PIAH COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS AND FAIR, JJ„ CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT . WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY ISHEE AND JAMES, JJ.