# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00945-COA

JAMES TURNER A/K/A JAMES JAFRE                APPELLANT
TURNER

v.

STATE OF MISSISSIPPI                               APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/05/2018 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 01/28/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.    On June 13, 2018, a Tunica County Circuit Court jury found James Turner guilty of leaving the scene of an accident resulting in death. Turner was sentenced to eight years in the custody of the Mississippi Department of Corrections, with five years suspended and three years to serve. The trial court also ordered Turner to pay a $1,000 fine and $6,500 in restitution.

¶2.    Turner filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The court denied Turner's motion. On appeal, Turner argues that

(1) the trial court erred in denying his two-theory circumstantial-evidence jury instruction; (2) the trial court erred when excluding portions of his statement to investigators; (3) the evidence was insufficient to sustain the jury's verdict; (4) the verdict was against the overwhelming weight of the evidence; and (5) the restitution portion of his sentence was illegal. Finding no error in Turner's first four issues, we affirm Turner's conviction. Because the trial court's order of restitution was not based on any evidence, we reverse and remand on that issue.

**FACTS**

¶3.     On the night of August 19, 2014, Samantha McClain Spates was driving down a dark highway in Tunica, Mississippi. As Spates continued down the highway, her vehicle stalled, bringing the car to a halt on the shoulder of the road. She exited the vehicle to investigate the issue. Suddenly, Spates was struck by a passing vehicle. The vehicle persisted forward and left the scene of the accident, leaving Spates injured and alone. Eventually, the police were alerted to the accident and arrived at the scene. Spates was found dead at the scene.

¶4.     A few miles down the road, a vehicle crashed into a ditch outside a residence. When the resident, Henry Williams, went outside to investigate, he saw a man, later identified as Turner, walking toward him. Turner was walking away from the vehicle in the ditch. As Turner neared Williams, he threw Williams a key and told him to get the car out of the ditch because Turner would return to retrieve the car later that evening. Williams did not get the car out of the ditch. When the police arrived at the scene, Williams described the interaction

2

with Turner, and the police began to investigate the accident contemporaneously with the hit-and-run.

¶5. Two days after the incident involving Spates's death, the police verified that the vehicle belonged to Turner, and they brought him to the police station for questioning. After the police obtained a valid waiver from Turner acknowledging his rights, two investigators questioned Turner concerning the night of his accident. After a brief period, the first two investigators were replaced by Lieutenant Katie Johnson. During the interrogation, Turner admitted to driving the silver Jaguar that was in the ditch but did not confess to striking Spates with his vehicle. Additionally, Turner claimed the damage to his vehicle was caused by rocks. The next day, Lieutenant Johnson questioned Turner once more.

¶6. As a product of Turner's questioning, the investigators learned that Turner walked from the Williams residence to the home of Monique Walls, Turner's cousin. Walls cooperated with the police and described the events of the evening. Walls testified that on the night in question, Turner arrived at Walls's home, which is located three miles from the Williams residence. Walls recounted that Turner asked for a ride to his home and told her that he had run his car into a ditch. Notably, Turner told Walls that he had just purchased a Jaguar but did not describe the color.

¶7. Meanwhile, the police collected and processed the evidence from the two scenes involving Spates and Turner. After the evidence was processed by the police and analyzed by a Mississippi Forensic Laboratory technician, the police determined that Turner's silver

Jaguar was the vehicle that struck Spates on that dark night in Tunica. The State subsequently indicted Turner for leaving the scene of an accident resulting in death—a felony.

¶8.     At trial, Henry Williams testified and identified Turner as the individual who crashed the Jaguar into the ditch, tossed him the keys, and told him to have the vehicle removed.

¶9.     In addition, the State called Jacob Burchfield, a trace-evidence technician from the Mississippi Forensic Laboratory, to testify, and Burchfield was accepted as an expert in glass examination and comparison. Burchfield described the test he performed on samples from the shattered windshield on Turner's Jaguar and glass fragments from Spates's clothing. Burchfield testified that glass from Spates's clothing was consistent with the known glass samples from the shattered windshield on Turner's Jaguar. Burchfield based his findings on the matching, color-refractive index, and elemental composition of the glass samples, stating that to a reasonable degree of scientific certainty, the glass could have originated from the silver Jaguar. Burchfield confirmed that his results were peer reviewed.

¶10.    On cross-examination, Burchfield admitted that a definitive match between glass fragments could only happen if there was a physical in-fracture match. Thus, to be one-hundred percent certain, the sample from Spates's clothing would require finding its originating position in the shattered windshield. Even so, Burchfield remained confident in the test results between the two samples because the elemental composition, refractive index, and the color of the samples matched.

4

¶11. During the trial, the three investigators who conducted the interrogation of Turner were called to testify. After Lieutenant Johnson was called to the stand, Turner's counsel asked the trial court to confine Lieutenant Johnson's testimony to the first interrogation with Turner and exclude the second interrogation that occurred. The trial court accepted the request, and the prosecution agreed to limit its questions for Lieutenant Johnson to the first interrogation. However, during cross-examination of Lieutenant Johnson, Turner's counsel questioned Lieutenant Johnson concerning admissions that Turner made during the second interrogation. When the prosecution objected, the trial court sustained the objection and reminded Turner's counsel that the second interrogation was excluded at their own request.

¶12. At the conclusion of the trial, Turner's counsel requested a two-theory jury instruction, arguing that the evidence was circumstantial. Although the trial court agreed that the evidence was purely circumstantial, the trial court denied Turner's request and gave a general circumstantial-evidence instruction. Ultimately, Turner was convicted and required to pay $6,500 in restitution to the injured family.

## ANALYSIS

### 1. The trial court did not err in refusing Turner's requested two-theory circumstantial-evidence jury instruction.

¶13. Turner first contends that the trial court should have granted his request for a two-theory circumstantial-evidence instruction. We review the refusal of jury instructions under an abuse-of-discretion standard. *Burleson v. State*, 166 So. 3d 499, 509 (¶28) (Miss. 2015). "A trial judge may refuse an instruction which incorrectly states the law, is covered fairly

5

elsewhere in the instructions, or refuse a jury instruction that is without foundation in the evidence." *Johnson v. State*, 235 So. 3d 1404, 1412 (¶23) (Miss. 2017) (internal quotation mark omitted). Circumstantial evidence is defined as "evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." *Shelton v. State*, 214 So. 3d 250, 258 (¶40) (Miss. 2017). Further, a trial court may "refuse a two-theory instruction *if* it has granted a (general) circumstantial evidence instruction." *Id*.

¶14. Here, the jury received the following circumstantial-evidence instruction:

> The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the defendant guilty of every material element of the crime with which he/she is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that the defendant is guilty. The presumption of innocence attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his/her guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. The defendant is not required to prove his/her innocence.

¶15. In *Shelton*, our supreme court affirmed a trial court's refusal of a two-theory instruction because the trial court gave a *general* circumstantial-evidence instruction. *Shelton*, 214 So. 3d at 258 (¶40). There, the court focused on the language within the jury instructions that the trial court used:

> The Court instructs the jury that the law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the Defendant guilty beyond a reasonable doubt and *to the exclusion of every reasonable hypothesis consistent with innocence*.

6

The presumption of innocence of the Defendant prevails unless overcome by evidence which satisfies the jury of the Defendant's guilt beyond a reasonable doubt and *to the exclusion of every reasonable hypothesis, consistent with innocence*. The Defendant is not required to prove his or her innocence.

*Id*. at (¶42). Thus, the court held that the decision to refuse the two-theory instruction was within the trial court's discretion. *Id*. at (¶41). Since the trial court used a general, circumstantial-evidence instruction, the court refused to examine whether the evidence was even circumstantial. *Id*.

¶16. Consistent with our supreme court's holding in *Shelton*, we find Turner's general circumstantial-evidence instruction was sufficient. As a result, we find the trial court was within its discretion to deny Turner's request to give a two-theory circumstantial-evidence instruction.

### 2. The trial court did not err in excluding portions of Turner's statements to investigators.

¶17. Turner next argues that the court erred in excluding portions of his statements to investigators. Before trial, Turner was interrogated twice by the police over the course of two nights. The first interview occurred on August 20, 2014, at 12:04 a.m. Lieutenant Johnson testified at trial to what Turner said during that first interview: that "he was the driver of that vehicle, that he had an accident, and I asked him what caused the dent in the windshield, and he said that when he hit the ditch, the rocks in the ditch put the dent in his windshield." The second interview occurred on August 21, 2014, at 3:15 p.m. During that interview, Turner admitted to the same facts previously mentioned but added that he was not

7

in the location where Spates was killed. Prior to the State eliciting testimony concerning both interviews, the defense counsel sought to prevent the prosecution from questioning Lieutenant Johnson concerning the second interrogation. The State agreed to limit questions to the first interview, and the trial court confined the prosecution's questioning to the first interrogation. During the direct examination of Johnson, the State abided by the agreement and did not ask any questions concerning the second interrogation. However, during cross-examination, the defense counsel sought to introduce statements made by Turner to Lieutenant Johnson *from the second interrogation*. The prosecution objected as to self-serving hearsay. The court sustained the objection and limited the defense counsel to the first interrogation as agreed to by counsel and ordered by the court. After the objection, defense counsel asked to enter a proffer into the record, considering the information he attempted to elicit, and the court indicated that could occur at the next break. However, no such proffer was made, and no proffer exists in the record on appeal.

¶18.    "The trial judge has ample power in his sound discretion to limit the introduction into evidence of those portions of the recording which are relevant and material." *Sanders v. State*, 237 Miss. 772, 777, 115 So. 2d 145, 147 (1959). "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Harrell v. State*, 179 So. 3d 16, 18-19 (¶9) (Miss. Ct. App. 2014) (quoting *Pham v. State*, 716 So. 2d 1100, 1102 (¶12) (Miss. 1998)). "[B]efore we will consider the matter on appeal the party must have somehow placed in the record the nature

8

and substance of the proffered evidence for our consideration." *Barron v. State*, 130 So. 3d 531, 539-40 (¶32) (Miss. Ct. App. 2013). As previously mentioned, the record on appeal does not contain any proffer. Consequently, Turner's argument is waived.

¶19. Waiver notwithstanding, Turner's argument has no merit. Turner argues that the excluded statement deprived the jury of knowing that Turner denied being in the area where Spates was found. However, that information was revealed during cross-examination:

> Q:     And during that conversation, did Mr. Turner ever admit to you that he struck and killed [] Spates?
>
> [Lieutenant Johnson]: No.
>
> Q:     As a matter of fact, he told you that he didn't even travel in the area [where Spates was found]; isn't that correct?
>
> [Lieutenant Johnson]: Yes.

Turner's counsel was clearly able to inform the jury of the exact information upon which Turner's present claim is based. Therefore, this issue is without merit.

### 3.     There was sufficient evidence to support Turner's conviction.

¶20. Turner argues that the court erred in denying his motion for a JNOV. "A motion for [judgment notwithstanding the verdict] challenges the sufficiency of the evidence presented to the jury." *Sacus v. State*, 956 So. 2d 329, 334 (¶12) (Miss. Ct. App. 2007). We apply a de novo review to challenges to the sufficiency of the evidence. *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018). In doing so, "we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each

9

element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017). The issue is not "whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010).

¶21. Turner was charged with the crime of leaving the scene of an accident resulting in death. The State was required to prove to the jury that Turner drove the vehicle that was involved in the accident that resulted in Spates's death. Here, the jury was presented with ample evidence to consider: (a) eyewitness testimony that Turner walked away from the crashed silver Jaguar on the night in question; (b) eyewitness testimony that Turner said he drove his car into the ditch, threw the keys to the eyewitness and told the eyewitness to get the car out of the ditch, all of which occurred just two miles from the accident scene where Spates was killed; (c) damage to his Jaguar which appears to have been caused by striking an object; (d) expert testimony that the glass from Turner's windshield matched the glass fragments found on Spates's clothing; and (e) police testimony concerning the investigation and interrogation of Turner, during which he admitted to owning and driving the Jaguar on the night in question. Additionally, the trial court properly gave a general circumstantial-evidence instruction to the jury. Reviewing the evidence in the light most favorable to the State, rational jurors could have found that the State proved each element necessary to convict Turner. Accordingly, the evidence was sufficient to support Turner's conviction, and the trial court did not commit error when denying Turner's motion for a JNOV.

10

### 4. The verdict was not against the overwhelming weight of the evidence.

¶22. Turner also asserts that the trial court erred in denying his motion for a new trial. A motion for a new trial has a different standard of review than a JNOV motion and challenges the weight of the evidence. *Daniels v. State*, 107 So. 3d 961, 963 (¶12) (Miss. 2013). We will reverse the trial court's denial of a motion for a new trial only if the trial court abused its discretion by doing so. *Id*. Our role as an appellate court is to "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id*.

¶23. As previously stated, the jury had ample evidence to consider. The jury judged each witness's credibility and ultimately determined that Turner was guilty of leaving the scene of an accident resulting in death. Viewed in the light most favorable to the verdict, we cannot find that it was contrary to the overwhelming weight of the evidence or that allowing it to stand would sanction an unconscionable injustice.

### 5. There was no evidence presented to support the court's $6,500 restitution award.

¶24. Lastly, Turner contends that the court erred in ordering him to pay $6,500 in restitution. We review the terms of a sentence for abuse of discretion. *Cummings v. State*,

11

58 So. 3d 715, 719 (¶19) (Miss. Ct. App. 2011). "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." *Id*. (quoting *Hoops v. State*, 681 So. 2d 521, 537 (Miss. 1996)). "Unless the sentence is grossly disproportionate or not within the statutory limits, we will not disturb the sentence on appeal." *Id*. (quoting *Owens v. State*, 17 So. 3d 628, 632 (¶8) (Miss. Ct. App. 2009)).

¶25.     Turner's trial ended on June 13, 2018. Turner's sentencing hearing was held that same day. Turner was sentenced to eight years in the MDOC's custody, with five years suspended and three years to serve. In addition, the trial court ordered Turner to pay a fine in the amount of $1,000. No restitution was determined at the sentencing hearing. In fact, at the sentencing hearing, the trial judge stated that he was not aware of any restitution. At the close of the hearing, the prosecution requested if they could "report back" on the issue of restitution, if there was any. The trial court granted the prosecution's request. However, any information that may have been given to the trial judge following the hearing was not made part of the record on appeal. The trial court subsequently entered a written sentencing order[1] that stated Turner "[s]hall pay the sum of $6,000.00 as reimbursement for funeral

---

[1] Both the jury verdict, dated June 13, 2018, and the judgment (including the sentencing order with restitution) appear to have been signed on June 13, 2018. However, both of those documents were not filed until July 5, 2018, and the record clearly shows a restitution amount was not available on June 13, 2018. This would indicate they were held until a restitution amount was determined. The record on appeal is void of any documentation as to whether another hearing occurred that would have afforded the Appellant the opportunity to object, as required by statute. Miss. Code Ann. § 99-37-3(3)

12

expenses to the Crime Victims Compensation Fund; pay the sum of $500.00 to Sarina McClain as reimbursement of the Crime Victims Compensation Fund deductible."[2]

¶26.    Mississippi Code Annotated section 99-37-3(1) allows for a restitution award in criminal activities that result in pecuniary damages:

> When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim . . . .

Turner first argues that this statute is inapplicable because he was not convicted of "criminal activities which [] resulted in pecuniary damages." Turner was convicted of leaving the scene of an accident that resulted in Spates's death. The pecuniary damage was, as the court correctly determined, the payment of Spates's funeral expenses. Thus, we find that section 99-37-3 applies and that Turner's argument is without merit.

¶27.    The State also argues that Turner waived this issue by not objecting to the order of restitution at the sentencing hearing. Mississippi Code Annotated section 99-37-3(3) implies that the defendant must object to the restitution at the time of sentencing, stating, "If the defendant objects to the imposition, amount or distribution of the restitution, the court shall, at the time of sentencing, allow him to be heard on such issue." *See also Powell v. State*, 536 So. 2d 13, 17 (Miss. 1988) (drawing the same inference and finding that the defendant waived the issue by failing to object at the trial level). Here, however, Turner was not

_____

(Rev. 2015).

    [2] McClain is Spates's daughter.

13

afforded an opportunity to object on the day Turner was sentenced because the trial court reserved its ruling on restitution. Then, without holding another hearing, the trial court issued its order on July 5, 2018, requiring Turner to pay $6,500 in restitution. Because Turner was not afforded an opportunity to object as required by Mississippi law, we find the issue properly preserved on appeal.

¶28. Section 99-37-3(2) describes what a court *shall* take into account when determining whether to order restitution:

> (a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;
>
> (b) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court; and
>
> (c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment.

Here, the record is silent as to how the trial court arrived at $6,500 for the restitution amount. As previously mentioned, the issue was not presented at the sentencing hearing, which occurred on the day Turner was convicted. The $6,500 order of restitution is not supported by any documents or testimony in the record. Nor is there any indication that Turner was told of the amount of restitution or provided an opportunity to object. As previously stated, on June 13, 2018, the day Turner was convicted, the State requested if it could "report back" on the issue, yet no other hearing was held. And the record is void as to exactly what the State reported back to the trial judge. In issuing its final order on July 5, 2018, the trial court did

14

not indicate whether it took into account *any* of the factors set forth in section 99-37-3(2). Further, there is nothing in the record to indicate that Turner was provided an opportunity to review and/or object to the restitution required. Thus, we find it was error for the trial court to have ordered $6,500 in restitution without any evidence to support the award or without providing Turner the opportunity to object, both of which are required under Mississippi law.

**CONCLUSION**

¶29. We find that the trial court was within its discretion to refuse Turner's two-theory circumstantial-evidence jury instruction and to exclude portions of Turner's statement to investigators. We further find that the evidence was sufficient to sustain the jury's verdict and that the verdict was not against the overwhelming weight of the evidence. Because we find the trial court erred in ordering Turner to pay $6,500 in restitution, we reverse the restitution order and remand for resentencing as to restitution only.

¶30. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR. CARLTON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**CARLTON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶31. I respectfully concur in part and dissent in part from the majority's opinion. The majority acknowledges that section 99-37-3(3) provides that "[i]f the defendant objects to the imposition, amount[,] or distribution of the restitution, the court shall, at the time of sentencing, allow him to be heard on such issue." Stated differently, a defendant must object

15

to the imposition of restitution at the time of sentencing, otherwise the defendant will waive the issue. *See Sims v. State*, 134 So. 3d 300, 304 (¶9) (Miss. 2014); *Powell v. State*, 536 So. 2d 13, 17 (Miss. 1988);[3] *Smith v. State*, 130 So. 3d 1187, 1191 (¶9) (Miss. Ct. App. 2014). Here, the majority finds that because Turner was not afforded an opportunity to object to restitution at the time of sentencing, the issue is properly preserved on appeal. I disagree.

¶32. The record reflects that at the sentencing hearing, the State asked the trial court if they could "report back as to the restitution, if there's any." The trial court responded: "You can, but you'll need to provide it to [defense counsel], . . . if [restitution is] something that you feel that should be included . . . ." The trial court then reserved its ruling on the matter. The sentencing order, which was signed the same day as the sentencing hearing, June 13, 2018, but entered onto the docket on July 5, 2018, reflects the imposition of $6,500 in restitution.

¶33. The transcript shows that the State did not set forth a specific amount of restitution at the sentencing hearing, and therefore I agree that Turner could not have objected to the amount at that time. However, section 99-37-3(3) states that a defendant must object to the imposition of restitution at the time of the sentencing hearing, and not just the amount, in order to preserve the issue.[4] Because Turner failed to object to the imposition of restitution

---

[3] In *Powell*, 536 So. 2d at 17, the supreme court found that it was error for the trial judge to use information that was not in evidence to determine the amount of restitution. *Id*. However, the supreme court did not reverse the amount of restitution, explaining that Powell did not object to the imposition of restitution at the time of sentencing, per the requirement of section 99-37-3(3), and therefore Powell waived the issue for appellate review. *Id*.

[4] *See also Shinn v. State*, 74 So. 3d 901, 904 (¶11) (Miss. Ct. App. 2011) ("[O]nce the circuit judge pronounces a sentence in a felony case, a sentencing order is entered of

16

at the sentencing hearing, I would find that Turner waived the issue of restitution.  He is

therefore procedurally barred from raising this issue on appeal.



record, and the term of court expires, the circuit judge is without jurisdiction to change or
modify that sentence at a later time.").