# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00587-COA

**CHRISTOPHER RANDALL**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                 **APPELLEE**

DATE OF JUDGMENT:               02/23/2023
TRIAL JUDGE:                    HON. DEBRA W. BLACKWELL
COURT FROM WHICH APPEALED:      ADAMS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:              SHAMECA SHANTE' COLLINS
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 10/15/2024
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Following a jury trial, Christopher Randall was convicted of aggravated assault and first-degree murder for shooting his ex-girlfriend, Larhonda Ware, and shooting and killing Ware's friend, Christopher White. The court sentenced Randall to serve consecutive terms in the custody of the Mississippi Department of Corrections (MDOC) of life for first-degree murder, twenty years for aggravated assault, and five years for a "firearm enhancement," Miss. Code Ann. § 97-37-37(1) (Rev. 2020). On appeal, Randall argues that the trial court erred by excluding evidence of White's postmortem toxicology report and by applying the firearm enhancement. We find no error and affirm Randall's convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

¶2.    On the night of September 6, 2019, Ware and White were outside at Ware's mother's home. Ware's mother, Deloris, asked White to clean out her car, which was parked near the porch. Later, Deloris heard gunshots, and Ware ran inside the house and said that her ex-boyfriend, Randall, had shot her. Deloris went outside and found White "slumped over" in the backseat of her car. Deloris and her other daughter moved White to the ground and began chest compressions, but White was not breathing. White had been shot at least four times and was "bleeding bad."

¶3.    Ware testified that she had ended her "[c]ontrolling and toxic" relationship with Randall just six days before the shooting, but that day, she had made plans to spend time with Randall. However, between 9 and 10 p.m., Ware decided to cancel her plans with Randall and "chill" with White instead. Ware and White smoked marijuana while White cleaned Deloris's car. Randall called Ware "five or six" times, and she spoke to him "[m]aybe two or three times." Randall also called White looking for Ware. At 10:55 p.m., Randall sent Ware a text message that stated, "Just know u did this luv." About thirty minutes later, Ware saw Randall in the yard next to Deloris's car, and Randall "start[ed] shooting." Ware stated that she did not witness a confrontation between White and Randall or any aggressive behavior by White prior to the shooting. After Randall shot White three or four times, he turned to Ware and began shooting her. Ware was shot in her chin, leg, and upper thigh.

¶4.    An ambulance transported Ware to a hospital, where Adams County Deputy Sheriff Dandridge Brooks later interviewed her. Ware told Brooks that she saw White reach for his

2

gun before she heard Randall's gunfire. However, Ware testified at trial that she did not see White reach for a gun and that she did not remember anything that happened at the hospital because she "was doped up."

¶5. Carla Dunn, an investigator and "crime scene tech" with the Adams County Sheriff's Office, was dispatched to the crime scene. Dunn testified that White was lying on the ground outside Deloris's car with five 9mm shell casings around him, which Dunn collected. Dunn found a .40-caliber Smith & Wesson handgun still in White's waistband. She did not find any .40-caliber casings at the scene. The gun's magazine or "clip" had a thirteen-round capacity. There were thirteen live rounds in the clip and one in the gun's chamber. Some marijuana, a digital scale, and cash were also found on White's person. About twenty-five days after the shooting, Deloris found two more 9mm shell casings in the driveway and a projectile inside her car, which she turned over to the sheriff's office.

¶6. Major Frank Smith, the head of the Criminal Investigations Division of the Adams County Sheriff's Office, arrived at the crime scene before Dunn. Smith acknowledged that there was "some time period" before law enforcement arrived when White's gun could have been moved, but Smith testified that there was no evidence that anyone moved White's gun. Smith also acknowledged that the drugs, cash, and scale found on White were indicative of narcotics sales. In addition, Smith testified that a container with two bags of a white crystal substance, "presumably cocaine," was found in White's back pocket. Smith testified that Randall later turned himself in to police.

¶7. Mark Boackle, a forensic scientist at the Mississippi Forensics Laboratory, testified

3

as an expert in firearms and tool-marks. Boackle testified that the bullet found at the crime scene and the bullets recovered from White's body during his autopsy were all 9mm bullets and were all fired from the same gun.

¶8.    Dr. Mark LeVaughn from the State Medical Examiner's Office performed White's autopsy. LeVaughn determined that White had six entry wounds, that he died as a result of multiple gunshot wounds, and that the manner of death was homicide.

¶9.    After the State rested its case-in-chief, Randall testified. He stated that he and Ware had an "on and off" relationship that ended the day before the shooting. He also stated that he and White knew each other and got along. However, Randall testified that the night before the shooting, he "bumped into White" at a convenience store, and White "drew his gun out." Randall and Ware had plans for the evening of September 6, but Randall testified that Ware stopped answering his phone calls. Eventually, Randall spoke to White on the phone, and they "had words." Randall testified that White told him to "walk lightly and stuff like that." According to Randall, as he walked into Deloris's yard that evening, "the door [swung] open," and White threatened to kill him. Randall testified, "When he reached for his gun, I just drew mine before he drew his. Because I'm scared. . . . I pulled my gun out and I started shooting. I closed my eyes and started shooting." Randall denied that he aimed his gun at Ware. Randall ran from the scene and threw his gun in the "nearest bayou."

¶10.    During Randall's cross-examination, a video of his statement to law enforcement was admitted into evidence and played for the jury. In the interview, Randall stated that prior to the shooting, White pulled a gun on him at Randall's grandmother's house rather than at a

4

convenience store, as he testified at trial. Randall also told officers that when he encountered White at Deloris's house, White actually "pulled a gun on [him]" rather than just "reached for his gun," as he testified at trial. In the interview, Randall denied shooting Ware.

¶11. An incident statement written by Captain Tony Nichols of the Adams County Sheriff's Office was also admitted into evidence. The incident statement purported to memorialize additional statements that Randall made while he was being held in the Adams County jail. According to Nichols, Randall admitted that "he shot [Ware] because he felt she betrayed him and set him up to be killed." However, Randall also told Nichols that when he arrived at Deloris's house, White "began to approach him screaming and threatening to do bodily harm to him" and that once Randall "saw a firearm, he became fright[ened] and pulled his gun and began firing." After the incident statement was admitted into evidence, Randall again denied that he shot Ware intentionally.

¶12. The jury found Randall guilty of first-degree murder and aggravated assault. The court sentenced Randall to serve consecutive terms of life imprisonment for first-degree murder, twenty years for aggravated assault, and five years for a "firearm enhancement," Miss. Code Ann. § 97-37-37(1). Randall filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

**ANALYSIS**

¶13. On appeal, Randall argues that (1) the trial court erred by excluding evidence of White's postmortem toxicology results, and (2) his additional five-year sentence for using a firearm is illegal.

### I. White's Toxicology Results

¶14. Prior to trial, the State filed a motion in limine to exclude any evidence of or reference to White's postmortem toxicology report. The State noted that the report "showed the presence of recreational drugs in the system of [White] at the time of his death." The State argued that such evidence was inadmissible "unless and until the [d]efendant claims that the victim was the initial aggressor." In his response to the State's motion, Randall argued that the evidence was relevant because "the fact that White had marijuana and promethazine in his system makes it more likely he would have initiated aggression due to his intoxicated state of mind."

¶15. At a pretrial hearing on the motion, the prosecutor stated that White's "autopsy results had a toxicology report stapled to show he was positive for cocaine, I believe." The prosecutor then argued,

> [The toxicology report would] be irrelevant and prejudicial unless, of course, [Randall] gets far enough in his presentation of evidence to fall under the benefit of a self defense argument. If he starts presenting evidence in the record that's going to justify self-defense at that time, those toxicology results become admissible under the law in Mississippi. But until that time, they shouldn't be talked about and they shouldn't be admitted.

After hearing arguments, the trial court stated that the evidence of "what was on [White's] person" (including marijuana and cocaine) would "all come in." But the court stated, "Now, the toxicology report, I think that's not relevant. It's more prejudicial than probative, the fact that he was under the influence. So the Court's not going to let the toxicology report in." In response, defense counsel argued that the evidence would be relevant and admissible once Randall introduced evidence of self-defense, and the prosecutor indicated he agreed. The

following exchange then occurred:

> Defense: What I would ask, Your Honor, instead of make a ruling now, wait until you hear what comes into evidence and we can take it up then maybe.
>
> Court: Until such time as you established a self-defense claim?
>
> Defense: Yes, Your Honor. That's what I would ask for.
>
> State: That makes sense to me, Your Honor.

The court then took a brief recess before moving on to jury selection. After jury selection and just before the trial began, the court stated in passing, "I made a ruling about the evidence on his body and the toxicology," before quickly moving on to other matters.

¶16. On appeal, Randall argues the trial court erred by excluding evidence of White's toxicology results, thus preventing Randall from fully presenting his theory of self-defense to the jury.[1] The State argues that Randall failed to preserve this issue because he failed to obtain a definitive ruling from the trial court and failed to make an offer of proof.

¶17. "This Court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard of review." *Deeds v. State*, 27 So. 3d 1135, 1140-41 (¶15) (Miss. 2009) (quoting *Smith v. State*, 986 So. 2d 290, 295 (¶12) (Miss. 2008)). We "will affirm the trial court's ruling unless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice . . . the accused in a criminal

---

[1] *See Newell v. State*, 49 So. 3d 66, 72-73 (¶¶14-17) (Miss. 2010) (holding that because the defendant offered evidence that he acted in self-defense and that the victim was the aggressor, the victim's "toxicology results were relevant to show all the circumstances under which the fatal difficulty occurred, and which would in any manner indicate the mental state of the deceased" (quotation marks and ellipsis omitted)).

case." *Id.* at 1141 (¶15) (quotation marks and brackets omitted).

¶18. We agree with the State that Randall failed to preserve this issue for appeal because he failed to offer the evidence at trial, failed to obtain a definitive ruling, and failed to make an offer of proof. "Once the court *rules definitively* on the record either before or at trial," "a party need not renew an . . . offer of proof to preserve a claim of error for appeal . . . ." MRE 103(c)(1) (emphasis added). However, "[i]t [is] incumbent on . . . the party asserting error[] to obtain 'a definitive, on-the-record ruling'" in order to preserve the issue for appeal. *Daniels v. State*, 348 So. 3d 1055, 1069 (¶60) (Miss. Ct. App. 2022) (quoting *Walker v. State*, 299 So. 3d 759, 765 (¶21) (Miss. 2020)).

¶19. Here, as set out above, Randall never obtained a definitive ruling on the admissibility of the toxicology report. Prior to trial, the State agreed that the evidence would be admissible if Randall presented evidence of self-defense. And although the trial court initially stated that it would exclude the toxicology report, the court later indicated, and the State agreed, that the issue could be revisited during trial if Randall presented evidence to support a claim of self-defense. Nonetheless, Randall did not attempt to introduce the toxicology report at any point during the trial. Because Randall failed to obtain a definitive ruling on the admissibility of the evidence, the issue is procedurally barred on appeal.

¶20. In addition, to preserve a claim that the trial court erred by excluding evidence, the proponent of the evidence must "inform[] the court of its substance . . . , unless the substance was apparent from the context." MRE 103(a)(2). This Court has repeatedly reaffirmed the need to make a proffer of evidence that has been excluded, stating:

8

> Generally, when a party seeks to offer evidence which in turn is excluded by the trial court, before we will consider the matter on appeal the party must have somehow placed in the record the nature and substance of the proffered evidence for our consideration. When testimony is excluded at trial, a record must be made of the proffered testimony in order to preserve the point for appeal.

*Evans v. State*, 294 So. 3d 664, 667 (¶12) (Miss. Ct. App. 2020) (quoting *Harrell v. State*, 179 So. 3d 16, 21 (¶15) (Miss. Ct. App. 2014) (quoting *Barron v. State*, 130 So. 3d 531, 539-40 (¶32) (Miss. Ct. App. 2013))).

¶21. Here, Randall failed to proffer the toxicology report, and the report's substance is not apparent from the record. Although Randall argues on appeal that the report would have "revealed the presence of cocaine in [White's] system," that is far from clear. As discussed above, during a pretrial hearing, the prosecutor stated that he "believe[d]" the report showed that White tested positive for cocaine, but that statement may not have been accurate. Randall's own written response to the State's motion in limine stated that the report showed that "White had *marijuana and promethazine* in his system." (Emphasis added). This discrepancy is significant because the jury heard evidence that White was smoking marijuana at the time of the fatal encounter; thus, a toxicology report showing that he tested positive for marijuana would have been cumulative and of little value. In addition, the record does not tell us anything at all about "promethazine," which is apparently a prescription medicine, or its effects on a person's mental state. Without an adequate proffer, this Court has no way to know what the toxicology report would have shown, whether it was relevant, or whether its exclusion was harmless or prejudiced Randall's defense. Therefore, the issue is procedurally barred on appeal for the additional reason that Randall failed to make an

adequate proffer. *Evans*, 294 So. 3d at 667 (¶12).

## II.      Firearm Enhancement

¶22.    Randall also argues that he should not have received an additional five-year sentence under the "firearm enhancement," Miss. Code Ann. § 97-37-37(1), which states:

> Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.

*Id.* Randall argues that the firearm enhancement is prohibited in this case because "a greater minimum sentence is otherwise provided by any other provision of law." *Id.* Specifically, his conviction for first-degree murder carries a mandatory sentence of life imprisonment. *See* Miss. Code Ann. § 97-3-21(1) (Rev. 2020).

¶23.    In *Davis v. State*, 379 So. 3d 312 (Miss. 2024), two defendants were convicted of two counts of first-degree murder and sentenced to life in prison. *Id.* at 316 (¶10). The trial court also added firearm enhancements to their sentences, "adding an additional five years for each count of first-degree murder that would run consecutive to the life sentences and consecutive to each enhancement." *Id.* at 316-17 (¶10). But on appeal, the Supreme Court vacated the firearm enhancements, explaining:

> The mandatory minimum and maximum sentence for first-degree murder is life. A life sentence is greater than the five years provided for in Section 97-37-37(1). Accordingly, a firearm enhancement under Section 97-37-37(1) is prohibited because "a greater minimum sentence is otherwise provided by" Section 97-3-21(1).

*Id.* at 318 (¶18) (citation omitted). Citing *Davis*, the State concedes that the trial court erred

10

by applying the firearm enhancement and sentencing Randall to an additional five years.

¶24.    However, Randall and the State fail to recognize that the trial court properly applied the firearm enhancement to Randall's aggravated assault conviction.  To convict Randall of aggravated assault, the jury was required to find that he caused serious bodily injury to Ware "[b]y shooting her in the leg with a firearm, a deadly weapon."  In addition, for Randall's aggravated assault conviction, no "greater minimum sentence [was] otherwise provided by any other provision of law," Miss. Code Ann. § 97-37-37(1), because "the [aggravated assault] statute specifies no minimum sentence."  *Vance v. State*, 803 So. 2d 1265, 1269 (¶14) (Miss. Ct. App. 2002); *see* Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2020).  Therefore, the trial court properly applied the firearm enhancement and added five years to Randall's sentence for aggravated assault.

¶25.    We note that the firearm enhancement provides that "any person who uses or displays a firearm during the commission of any felony shall, *in addition to the punishment provided for such felony*, be sentenced to an additional term of imprisonment [of five years in MDOC's] custody." Miss. Code Ann. § 97-37-37(1) (emphasis added).  Thus, where the jury finds that the defendant used a firearm to commit multiple felonies, the trial court shall add five years to the sentence for *each* "such felony."  *See, e.g.*, *Wales v. State*, 73 So. 3d 1113, 1115-16 (¶1) (Miss. 2011) (noting that the court sentenced the defendant to four additional five-year terms for four convictions); *Washington v. State*, 384 So. 3d 513, 518 (¶1) (Miss. Ct. App. 2023) (noting that the defendant was sentenced to three additional five-year terms for three convictions), *cert. denied*, 385 So. 3d 392 (Miss. 2024).  The fact that one offense

11

carries "a greater minimum sentence" means that the enhancement does not apply *to that offense*, but it does not preclude the enhancement's application to other offenses that the defendant committed using a firearm.

## CONCLUSION

¶26. We affirm Randall's conviction and sentences.

¶27. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WEDDLE, J., NOT PARTICIPATING.**